UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: 04-CV-03997 DSD/SRN

---

| | |
|---|---|
| **Edward Kivel and Lisa Mensing-Kivel,** | |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **WealthSpring Mortgage Corporation,** | |
| Defendant. | |

---

## INTRODUCTION

This is an action brought by Plaintiffs Edward Kivel and Lisa Mensing-Kivel (the "Kivels") for violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA"); Minnesota's Prevention of Consumer Fraud Act, Minn Stat. § 325F.69 ("CFA"); Minnesota's Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. §58.13 ("RMOSLA"); Minnesota's statute on Interest Rate Discount Point Agreements, Minn. Stat. § 47.206 ("IRDPA"); and a common-law breach of contract.

Defendant has moved for summary judgment on each of Plaintiffs' counts. This memorandum is submitted by Plaintiffs to demonstrate that, rather than meeting its burden to establish "no genuine disputes of material fact," Defendant instead has merely misunderstood Plaintiffs' allegations and then applied inapposite case law to the verified facts of the complaint. For these reasons, summary judgment for the Defendant on any Count should be denied.

1

**FACTS AND PROCEDURAL POSTURE**

After an initial "cold call" solicitation, WealthSpring Employee Blake Hayden contacted the Kivels on March 9, 2004 to arrange the details for refinancing the Kivels' home mortgage. Plaintiffs' Verified Complaint ¶¶ 6 & 7. By telephone, Hayden and the Kivels arranged for a refinancing deal with the following terms: a $325,000 loan at 4.875% APR and with no closing costs. Plaintiffs' Verified Complaint ¶7. On March 12, 2004, Hayden and the Kivels met and generated two documents regarding the agreement; a "Rate Lock Agreement" ("RLA") and a Good Faith Estimate ("GFE.") Plaintiffs' Verified Complaint ¶¶ 8 & 11. Hayden left without giving a copy of either document to the Kivels. Plaintiffs' Verified Complaint ¶¶ 9, 10 & 11.

On or around March 23, 2004, Defendant uploaded the Kivels' application information to the mortgage lender InterFirst's computer system. Plaintiffs' Verified Complaint ¶¶ 12. However, in doing so, Defendant also intentionally inflated the Kivels' requested loan amount by $4500 without their knowledge or permission. Id. Soon after the March 12th meeting the Kivels realized that they had not received any documentation regarding their loan, especially a copy of the RLA and the GFE. Plaintiffs' Verified Complaint ¶¶ 13 & 14. Between March 12 and May 5 of 2004, Plaintiffs made repeated requests for a hard copy of their RLA and GFE, but Defendant continuously failed to provide these. Plaintiffs' Verified Complaint Id.

As the Kivels' began inquiring about the status of their application, Defendant told them repeatedly that the lender InterFirst had denied the Kivels' application. Plaintiffs' Verified Complaint ¶¶ 23, 26, 27, 29. The Kivels contacted InterFirst directly and were explicitly told by InterFirst that their loan had not been denied and that InterFirst was waiting for further information from the Defendant. Plaintiffs' Verified Complaint ¶ 21. The Kivels demanded proof from Defendant of InterFirst's "denial and on May 5, 2004 Defendant actually created

false documentation which purported to show that InterFirst had denied the Kivels' application. Plaintiffs' Verified Complaint ¶ 29.

Defendant, on several occasions, told the Kivels that their application had been denied because of a problem with a soil and septic contamination.  Plaintiffs' Verified Complaint ¶ 15. The Kivels contacted the Minnesota Department of Health ("MDH") and determined that no contamination existed that would have any bearing on the ability to refinance their home and then even arranged for a MDH official to communicate this fact directly to Defendant's employee Blake Hayden. Plaintiffs' Verified Complaint ¶ 17. However, Hayden continued to assert that the alleged contamination would negatively impact the Plaintiffs' property value. Plaintiffs' Verified Complaint ¶ 30, and generally. On May 1, 2004, the Kivels went to the Defendant's business and requested, in writing, that they be provided with a copy of all documentation relating to their loan application. Plaintiffs' Verified Complaint ¶ 29. Later that day in a telephone conversation, Hayden threatened Mr. Kivel that the existing home loan would become due and that the Kivels would not be able to find any other substitute financing for the property. Plaintiffs' Verified Complaint ¶ 25.

Plaintiffs filed this present action against Defendant alleging violations of Federal law, Minnesota law and the common law of contracts. Defendant has moved for summary judgment on all of these claims.

Plaintiffs have filed, served and argued a motion for leave to amend their complaint to include a claim for punitive damages which is currently under consideration by MJ S. R. Nelson. The affidavit attached here to as EX. A was submitted in support of that motion and is provided to the court in this matter as additional sworn testimony in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

## **ARGUMENT**

### I.   **THE LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is only appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp v.Catrett, 477 U.S. 317, 322 (1986). When making this determination, the Court should view the record in the light most favorable to the non-moving party, giving "that party the benefit of all reasonable inferences to be drawn from the underlying facts." United States v. Friedrich, 402 F.3d 842, 844 (8th Cir. 2005).

Plaintiffs observe that, generally: Defendant's arguments are legal in nature and do not attempt to controvert any underlying verified factual allegations in Plaintiffs' Verified Complaint. As a result, this Responsive Memorandum similarly focuses on Defendant's legal reasoning and legal research.

### II.  **THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT ON PLAINTIFFS' EQUAL CREDIT OPPORTUNITY ACT CLAIM.**

   A.   Plaintiffs Do Not Need to Allege Protected Class Status to Bring an ECOA "Failure to Notify of Adverse Action" Claim.

The ECOA requires that a creditor provide applicants with an adverse action notice within 30 days of a denial of credit or a refusal to grant credit in substantially the amount or on substantially the terms requested. 15 U.S.C. § 1691(d). Defendant asserts that Plaintiffs do not have standing to file an ECOA claim because Plaintiffs have not alleged that they are members of a protected class. Defendant's Memo Supporting Summary Judgment ("Def's Memo"), at pg. 4.[1] Plaintiffs do not assert that they have alleged membership in a protected class. Instead

---

[1] In moving for summary judgment, Defendant did not dispute any other elements of this claim, (i.e. "creditor" or

4

Plaintiffs demonstrate with on-point case law that such membership is not required for their particular ECOA claim.

Defendant's argument fails because it does not distinguish between the ECOA's causes of action for discrimination claims and the causes of action for the statute's procedural claims. The Plaintiffs have not alleged any discrimination on the basis of membership in a protected class; instead Plaintiffs allege that [1] Defendant failed to comply with the adverse action notice requirement, and then [2] further discriminated against Plaintiffs when the Plaintiffs made a good faith effort to exercise their right to receive an adverse action notice. Plaintiffs' Verified Complaint ¶ 40 & 41.

Plaintiffs agree that only members of protected classes can allege that they were discriminated against on the basis of membership in that protected class. However, Courts have made a clear distinction between *discrimination claims* and the ECOA's other *procedural requirement claims*. For example, in Cannon v. Metro Ford, Inc., the Court found "that Plaintiff need not allege membership in a protected class to state a claim for violation of the ECOA's written notification requirements." 242 F. Supp.2d 1322, 1331 (S.D. Fla. 2002.) In reaching this holding the court noted:

> Subsection (d) requires a creditor to provide written notification to all credit applicants, regardless of whether the applicant is a member of a protected class. See 15 U.S.C. § 1691a(b) (defining "applicant" as "any person who applies to a creditor . . .")

Id. at 1331.

All courts that have considered this specific issue have reached the same conclusion. See e.g., Costa v. Mauro Chevrolet, Inc., 2005 U.S. Dist. LEXIS 14539, at *21 (N.D. Ill. July 18,

---

"adverse action.") Def's Memo, generally.

2005) (" Because section 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's anti-discrimination provisions, the Court finds that Alvarado's allegation that Mauro Chevrolet failed to provide written notification of an adverse credit decision is sufficient to establish an ECOA claim."); Polis v. American Liberty Financial, Inc., 237 F.Supp 2d 681, 688 (S.D.W.Va. 2002) (Plaintiff need not belong to a protected class to state a claim under § 1691(d)(1)); Titus v. Mortgage Enterprise, Ltd., 304 A.D.2d 746, 747 (2nd Dept. App. Div. N.Y. April 21, 2003) ("courts have repeatedly held that a plaintiff is not required to allege discrimination in order to state a viable claim for a violation of the Act's procedural requirements;") Rayburn v. Car Credit Center Corp., No. 00 C. 3361, 2000 WL 1508238 (N.D. Ill. Oct.10 2000).

No on-point authority refutes Plaintiffs' legal position.  Defendant cites three cases to support its position; however, all of these cases relate to *discrimination claims*, not *notice requirement* claims.  Rowe v. Union Planters Bank of Southeast Missouri, 289 F.3d 533, 534 (8th Cir. 2002) (alleging race discrimination); Williams v. Amity Bank, 703 F. Supp. 223, 225 (D. Conn. 1988) (alleging various discrimination); and First Fidelity Bank, N.A., New Jersey v. Best Petroleum, Inc., 757 F. Supp. 293, 297 (S.D.N.Y. 1991) (where a defendant shareholder attempted to use ECOA as a defense to a guarantee claim.)  The First Fidelity opinion did include some broader dicta ("a party must be a member of a protected class in order to assert a claim under the ECOA.")  Id. at 296.  Yet this non-binding 14 year-old opinion did not address the statutory notification requirement and preceded several cases that clarify the very distinction which Defendant attempts to blur.

If this Court is not persuaded by the clear, unambiguous statutory language as well as the recent on-point case law, then the Court should also consider the absurd policy ramifications

inherent in Defendant's unsupported legal proposition. If § 1681(d) only requires that adverse action notifications be provided to members of protected classes, then, intuitively, lending institutions would have to determine whether each applicant was a member of any protected class. In other words, the lenders would have to ask the applicants to reveal whether they were a member of any of the protected classes (race, color, religion, national origin, sex or marital status, age, and income derived from public service.) Such an invasive practice would create an appearance, if not an actual practice, of the very same evil that the ECOA was intended to prevent: differentiation of treatment based on membership in a protected class.

    B.  Plaintiffs have shown that Defendant Violated the ECOA's "Good Faith Exercise" Provision.

The ECOA prohibits discrimination "because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3)(2004).[2] Defendant argues that Plaintiffs' claim fails the "good faith attempt" requirement in the ECOA. Def's Memo, at 5. Defendant's argument may be summarized as asserting that the Plaintiffs "do not" and "cannot" claim that they had exercised any rights under the ECOA. Id.[3]

Plaintiffs allege that Defendant interfered with their credit application to such an extent that the interference constituted an adverse action. See, e.g., Plaintiffs' Verified Complaint ¶ 38. Defendant's analysis does not dispute this. Def's Memo, generally. As a result, Plaintiffs had a statutory right to receive an "adverse action notice." 15 U.S.C. § 1691(d); see also § I-A of this memorandum. Plaintiffs proof shows that they made a good faith attempt to exercise their right

---

[2] Defendant agrees on this point - it cites the same authority. Def's Memo, at 5.
[3] In moving for summary judgment, Defendant does not present argument relating to the other elements, i.e., "that Plaintiffs did not act in good faith", or "that Defendant did not take an adverse action." Def's Memo, generally.

to receive an "adverse action notice."  See, e.g., Plaintiffs' Verified Complaint ¶ 40.  In response to Plaintiffs' efforts, Defendant [1] threatened to Plaintiffs that they would lose their home, [2] attempted to manipulate InterFirst's computer system, and [3] generally escalated its efforts to thwart Plaintiffs' credit application.  See, e.g., Plaintiffs' Verified Complaint ¶¶ 25, 31-32, 40, & generally as well as the Affidavit attached hereto as Ex A.

This explanation of Plaintiffs' position demonstrates that Plaintiffs *have* shown that they were denied credit and suffered discrimination because they asserted their statutory rights under the ECOA.  Summary judgment against Plaintiffs on this point should be denied.

### III.     THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' MINNESOTA STATUTE CLAIMS BECAUSE THESE CLAIMS SEEK AN INJUNCTION THAT WILL PROVIDE A PUBLIC BENEFIT UNDER THE PRIVATE ATTORNEY GENERAL STATUTE.

Minnesota's Private Attorney General Statute states that:

> *any person* injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover *damages*, together with costs and disbursements, including costs of investigation and *reasonable attorney's fees*, and receive *other equitable relief* as determined by the court.

Minn.Stat. § 8.31, subd. 3(a) (emphasis added.)  Minnesota case law has limited use of § 8.31 by private litigants to actions that would provide a "public benefit."  See, e.g., Ly v. Nystrom, 615, N.W.2d 302, 314 (Minn. 2000).

In moving for summary judgment on Plaintiffs' CFA, RMOSLA, and IRDPA claims, Defendant argues only that these claims would not provide a public benefit.[4]  Def's Memo, at 6-

---

[4] Plaintiffs do not actually dispute Defendant's assertion that these Minnesota statutes do not specifically lay out themselves a private right of action.  Def's Memo, at 6-7.  However a private right of action is available through Minn. Stat. § 8.31, Subd. 3a.

11. Notably, in moving for summary judgment, Defendant does not deny that it violated these Minnesota statutes, but rather that Plaintiffs are unable to seek their requested relief. See Def's Memo, generally.

Defendant's Memorandum misrepresents the Plaintiffs' Verified Complaint by claiming that the Plaintiffs have only sought "damages and attorney's fees." Def's Memo, at 6. Plaintiffs clearly and unambiguously pray for *"injunctive relief to force Defendant to stop and desist from all such consumer harmful conduct and sales and practice methods described herein."* Plaintiffs' Complaint, Prayer for Relief. (on page 10.)

Assuming that Plaintiffs will prove that Defendant violated these Consumer Protection laws as alleged in the Complaint and that the requested injunction should be given, this injunctive relief will provide a real and tangible benefit to the general public by preventing Defendant from continuing to violate these Minnesota laws.

Whether the public will benefit from an injunction will turn on whether Defendant is violating these statutes - an issue unaddressed by Defendant's argument. At a minimum, this represents a genuine factual dispute that would appropriately be resolved by the trier of fact. Summary judgment against the Plaintiffs on these Counts should be denied.

**IV.    THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT ON PLAINTIFFS' CONTRACT CLAIM BECAUSE A GENUINE DISPUTE REMAINS AS TO WHETHER THE DEFENDANT VIOLATED ITS "GOOD FAITH" DUTY.**

Restatement 2d Contracts § 205 (2004) states "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."

Minnesota has adopted this rule. See e.g. <u>In the Matter of Wren</u>, A04-207 (Minn 7-28-

2005); Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995); Plaistad v. Fuhr, 367 N.W.2d 541, 545 (Minn. Ap. 1985).

Defendant's argument for summary judgment on this Count should be summarized as: [1] WealthSpring *did* technically forward the Plaintiffs' application to a lender, [2] therefore no possible contractual claim could be brought. See e.g. Def's Memo, at 11-12.

This argument is disingenuous and represents a fundamental misunderstanding of contract law – especially the requirements of good faith. Plaintiffs' proof, in the form of the Verified Complaint and sworn Affidavit, shows that, even though Defendant forwarded Plaintiffs' application to InterFirst, the Defendant nevertheless repeatedly and intentionally attempted to thwart this same application by [1] continuously asserting that InterFirst had denied the Plaintiffs' loan - in full knowledge that InterFirst had not denied the loan, [2] manipulating InterFirst's computer system so that it would temporarily indicate that the loan had been denied, listing false and contrived reasons for the alleged denial, and [4] acting in general bad faith to prevent the consummation of what Defendant claims to have "assisted." See Plaintiffs' Verified Complaint ¶¶ 21-23, 27, 31-33, 34, and generally.

## CONCLUSION

In its supporting memo, Defendant conveniently ignores all of these acts of bad faith and relies upon an assertion of technical compliance. Resulting in an improper constriction of Plaintiffs' contractual claims – hardly a sufficient basis for summary judgment. Defendant's summary judgment motion should be denied on this count as well and in its entirety.

Dated this 22nd day of August, 2005.    **LYONS LAW FIRM, P.A.**


By: s/ Thomas J. Lyons
Thomas J. Lyons
Attorney I.D. #: 65699
342 East County Road D
Little Canada, Minnesota 55117
Telephone: 651-770-9707

**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons, Jr.
Attorney I.D. #: 0249646
342 East County Road D
Little Canada, Minnesota 55117
Telephone: 651-770-9707