```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 04-3997(DSD/JJG)
```

Edward Kivel and
Lisa Mensing-Kivel,

   Plaintiffs,

v.                  **ORDER**

WealthSpring Mortgage
Corporation,

   Defendant.

  John H. Goolsby, Esq. Consumer Justice Center, 342 County Road D E, Little Canada, MN 55117 and Thomas J. Lyons, Esq., Lyons Law Firm, 342 County Road D E, Little Canada, MN 55117, counsel for plaintiffs.

  Edward T. Matthews, Esq., Lora E. Mitchell, Esq. and Fredrikson & Byron, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendant.

  This matter is before the court upon defendant's motion for summary judgment.  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

  On March 12, 2004, plaintiffs Edward Kivel and Lisa Mensing-Kivel entered into a Rate Lock Agreement ("Agreement") with defendant WealthSpring Mortgage Corporation to refinance their property.  (Matthews Aff. Ex. A.)  The Agreement guaranteed

plaintiffs certain mortgage terms if their loan application was approved by a lender. (Id.) Specifically, the agreement locked in the rate of the conventional mortgage at 4.875% until April 12, 2004. (Id.) If plaintiffs' loan did not close by April 12, 2004, defendant was not bound by the terms of the Agreement. (Id.) On March 12, defendant also generated a Good Faith Estimate for plaintiffs that estimated the amount of the loan to be $325,000. (Pls.' Aff. Supp. Mot. Amend Compl. ¶ 4.) Despite requests, plaintiffs did not receive a copy of the Agreement or the Good Faith Estimate until May 5, 2004. (Compl. ¶¶ 13, 14.)

On April 6, 2004, plaintiffs were informed by Blake Hayden, an employee of defendant, of a possible contamination problem on their property. (Compl. ¶ 15.) Plaintiffs claim the Minnesota Department of Health e-mailed Hayden three days later to inform him that there was no environmental contamination on plaintiffs' property, though defendant denies this communication occurred. (See Compl. ¶ 17.) The Agreement expired on April 12, 2004, although the parties dispute whether it was orally extended for an additional fifteen days.

On April 21 and May 3, 2004, plaintiffs were orally informed by defendant that their loan application had been denied by the lender, Mortgages Online at Interfirst ("Interfirst"). (Id. ¶ 23.) On May 6 plaintiffs requested documentation that Interfirst had denied their loan and defendant provided them with a written

2

Notification and Statement of Reasons for Credit Denial, Termination or Change, dated May 3, 2005. (Id. ¶¶ 28, 29.) The basis for the denial given by Interfirst on the written notification was environmental conditions that were indicated when the property was appraised. (Id. ¶ 30.) Plaintiffs believe, however, that Interfirst never denied their loan application and that the written denial was falsely generated by defendant. (Id. ¶¶ 23, 29.) They further allege that defendant's conduct throughout the application process caused their loan application to be denied and, as a result, they were unable to refinance when interest rates were most favorable. (Id. ¶ 35.)

On September 2, 2004, plaintiffs commenced the present action alleging that defendant's performance under the Agreement constituted a breach of contract and violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f. Plaintiffs also assert violations of Minnesota law pursuant to the Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-.70, the Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. §§ 58.01-.17, and Minnesota Statutes section 47.206 (regulating financial corporations). Defendant now moves for summary judgment on all claims.

**DISCUSSION**

**I.    Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Equal Credit Opportunity Act

Count I of plaintiffs' complaint alleges violations of the Equal Credit Opportunity Act ("ECOA") which establishes procedural requirements that creditors must follow in notifying applicants when certain action is taken on credit applications. See 15 U.S.C. § 1691(d). The principal purpose of the ECOA is to prohibit discrimination by creditors based on, inter alia, the good faith exercise by an applicant of a right they are entitled to under the Consumer Credit Protection Act. See id. § 1691(a)(3). Plaintiffs argue that defendant violated the ECOA by (1) providing plaintiffs with an untimely and false notice of adverse action taken on their loan application and (2) discriminating against plaintiffs because they had in good faith exercised their right to receive a timely notice of adverse action. (See Compl. ¶¶ 40, 41, 42.)

### A. The ECOA's Procedural Notification Requirement.

The first ground for plaintiffs' ECOA claim is that defendant violated the procedural notification requirements by not providing them with an accurate and timely notification of adverse action. See 15 U.S.C. § 1691(d). The notification requirements set forth by the ECOA are distinct and separate requirements imposed upon creditors. See Davis v. U.S. Bancorp, 383 F.3d 761, 766 (8th Cir.

2004) ("In addition to a generalized prohibition of discrimination, [ECOA] also establishes procedural requirements for extending credit and communicating with applicants.")  Creditors are required to notify applicants of the action taken on their completed application within thirty days of receipt.  15 U.S.C. § 1691(d)(1). Furthermore, "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."  Id. § 1691(d)(2).  To establish liability under § 1691(d), a plaintiff must show that a creditor took adverse action against their credit application and failed to provide them with written notification of the reasons for the adverse action.[1] Madrigal v. Kline Oldsmobile, Inc., 423 F.3d 819, 822 (8th Cir. 2005); see also Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 978 (7th Cir. 2004) (analyzing three elements of a notification claim under § 1691(d)).

For purposes of the ECOA, a "creditor" includes one who "regularly arranges for the extension, renewal, or continuation of credit."  See 15 U.S.C. § 1691a(e).  Only for purposes of the

---

[1] Defendant argues that it is entitled to summary judgment on plaintiffs' notification claim because plaintiffs must be members of a protected class to file suit under the ECOA.  Defendant's argument fails, however, because being a member of a protected class is not a prerequisite to bringing a claim based upon a creditor's violation of the procedural notification requirements of § 1691(d).  See Madrigal v. Kline Oldsmobile, Inc., 423 F.3d 819, 822 (8th Cir. 2005); Dufay v. Bank of Am. N.T. & S.A. of Or., 94 F.3d 561, 564 (9th Cir. 1996); Cartwright v. Am. Sav. & Loan Ass'n, 880 F.2d 912, 925-26 (7th Cir. 1989); Jochum v. Pico Credit Corp., 739 F.2d 1041, 1043 (5th Cir. 1984).

ECOA's prohibition against discrimination and discouragement, however, does the term "creditor" include a person who "in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made."  See 12 C.F.R. § 202.2(l) (referencing 12 C.F.R. §§ 202.4(a) and (b)); 12 C.F.R. Pt. 202, Supp. I, cmt. 2(l)-2.  The Federal Reserve Board specifically revised its official interpretation of "creditor" to clarify its intent that those participants in the application process whose only role is to accept and refer applications, who do not have discretion to decide whether credit will be extended and who do not participate in setting the terms of the credit arrangement are subject only to the ECOA's discrimination and discouragement prohibitions.  See 68 Fed. Reg. 13144-01, 13155 (Mar. 18, 2003).

"Adverse action" is defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).  The regulations explain that the definition of adverse action includes a "termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts" as well as "a refusal to increase the amount of credit available to an applicant who has made an

application for an increase." 12 C.F.R. § 202.2(c)(1). If adverse action is taken, a creditor can satisfy the notification requirement by providing the applicant with a written statement of specific reasons for the adverse action. 15 U.S.C. § 1691(d)(2),(3); 12 C.F.R. § 202.9. Where the credit request was made by a third party on behalf of an applicant, the notification requirements may be fulfilled by either the creditor or the third party, provided the identity of the creditor is disclosed. 15 U.S.C. § 1691(d)(4).

Plaintiffs allege that defendant, a mortgage broker, is a creditor for purposes of the notice requirements of the ECOA. Defendant, however, did not have authority or discretion to extend credit to plaintiffs. Interfirst, the lender, made the ultimate decision to deny plaintiffs' loan application. Given the official interpretation of the definition of "creditor," it is not entirely clear whether defendant played an active enough role in the credit application process to be a "creditor" for purposes of the ECOA's notification requirements. Pursuant to the Agreement, however, defendant participated in setting the terms of the credit arrangement and determined the loan type, loan term and interest rate. (See Matthews Aff. Ex. A.) Furthermore, it was defendant that actively solicited plaintiffs to refinance their property. (Compl. ¶¶ 6,7.) The court finds, therefore, that defendant participated in the application process to a degree that warrants

holding defendant subject to the procedural notification requirements of the ECOA. Cf. Treadway, 362 F.3d at 980 (holding car dealership that is able to restructure terms to meet creditor's concerns and set the annual percentage rate is a creditor for purposes of the ECOA's notice requirements).

Plaintiffs also allege that defendant "interfered with their credit application to such an extent that the interference constituted an adverse action." (Pls.' Mem. Opp'n Def.'s Mot. Summ. J. at 7 (citing Compl. ¶ 38).)  Plaintiffs have not offered any evidence to support their allegation that defendant substantially interfered with their loan application process. Furthermore, assuming their allegations to be true, plaintiffs have provided no authority to support their proposition that this is the type of adverse action contemplated by the ECOA.  Having failed to establish that defendant took adverse action on their loan application, plaintiffs were not entitled to notification of adverse action from defendant under § 1691(d).[2]  Therefore, summary judgment in favor of defendant on plaintiffs' notification claim is warranted.

---

[2] To the extent plaintiffs argue they did not receive sufficient notice of the credit denial, the statutory requirements were likely satisfied by the "Notification and Statement of Reasons for Credit Denial, Termination or Change," dated May 3, 2004, which specifically stated the reason for the credit denial. (See Compl. ¶¶ 29, 30.)

9

**B.    The ECOA's Discrimination Prohibition.**

The second ground for plaintiffs' ECOA claim is that defendant discriminated against them for exercising their rights under the Consumer Credit Protection Act. See 15 U.S.C. § 1691(a)(3). The Eleventh Circuit has specifically addressed lawsuits brought under § 1691(a)(3) and has held that a plaintiff must show they "(1) exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against [them] with respect to the credit transaction." Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1335 (11th Cir. 2000). The prima facie case established by the Eleventh Circuit in Bowen is consistent with the statutory and regulatory requirements set forth by the ECOA and will therefore be applied by this court in addressing plaintiffs' claim. See 15 U.S.C. § 1691(a)(3); 12 C.F.R. § 202.1(b).[3]

The right that plaintiffs claim to have exercised in good faith was their right to receive an adverse action notice under § 1691(d) of the ECOA. (Pls.' Mem. Opp'n Def.'s Mot. Summ. J. at 8-9.) In response to their efforts to receive an adverse action notice, plaintiffs allege that defendant threatened that they would

---

[3] The holding of the Eighth Circuit in Rowe, relied upon by defendant, is inapposite because plaintiffs are not asserting that they were discriminated against because they are members of a protected class. See Rowe v. Union Planters Bank of Southeast Mo., 289 F.3d 533, 535 (8th Cir. 2002) (establishing the elements for a prima facie discrimination claim under § 1691(a)(1) where plaintiffs alleged race discrimination).

lose their home, manipulated Interfirst's computer system, and escalated its efforts to thwart their credit application. (Id. at 8.) As discussed above, however, plaintiffs have not established that defendant took adverse action on their loan application and therefore they were not entitled to an adverse action notice from defendant. See 15 U.S.C. § 1691(d)(2),(6). Even if they were entitled to such notice, plaintiffs have failed to set forth any nexus between their request for a notice of adverse action and the denial of their loan application by Interfirst that could amount to discrimination. Defendant's motion for summary judgment is granted as to plaintiffs' ECOA claims.

### III. Minnesota Statutory Claims

Plaintiffs bring Counts II, III and IV of their complaint pursuant to Minnesota's private attorney general statute based on alleged violations of Minnesota's Prevention of Consumer Fraud Act, Minnesota's Residential Mortgage Originator and Servicer Licensing Act, and the Minnesota Statute on Interest Rate or Discount Point Agreements. The private attorney general statute authorizes individuals to bring civil suits to recover damages for violations of Minnesota law that relate to "unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31 subds. 1, 3a. Only claimants who can "demonstrate that their cause of action benefits the public," however, are proper claimants under the private attorney general statute. Ly v.

Nystrom, 615 N.W.2d 302, 314 (Minn. 2000); see also Berczyk v. Emerson Tool Co., 291 F. Supp. 2d 1004, 1020 (D. Minn. 2003) (dismissing claims because plaintiffs failed to meet public benefit requirement enunciated in Ly v. Nystrom).

Whether a plaintiff is a proper claimant and satisfies the public benefit requirement is a threshold issue. Davis v. U.S. Bancorp, 383 F.3d 761, 767 (8th Cir. 2004). The public benefit requirement is typically not met where the alleged conduct occurs in an individualized setting because successful prosecution of such conduct would not advance the state's interests. See Ly, 615 N.W.2d at 314 (where transaction was completed on "one-on-one basis" the public benefit requirement was not met); Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578 (Minn. Ct. App. 2004) (where claim relates to "single one-on-one incident" affecting only plaintiff, public benefit requirement is not met). If a plaintiff were allowed to utilize the private attorney general statute to file suit based solely upon his or her individual experience, the result would be a limitless class of potential plaintiffs. See Davis, 383 F.3d at 768. Therefore, in deciding whether a public benefit exists, the court will not assume that "one individual's negative experience with a company was necessarily duplicated for every other individual." Id. at 768. As a result, merely seeking injunctive relief has been held insufficient to constitute a public benefit. See Behrens v. United Vaccines, Inc., 228 F. Supp. 2d

12

965, 971 (D. Minn. 2002) (simply causing defendant to be more forthright in the future as a result of injunctive relief does not satisfy public benefit requirement).

To establish a public benefit in this case, plaintiffs point solely to their request for injunctive relief on the grounds that if such relief were granted, it would "provide a real and tangible benefit to the general public by preventing Defendant from continuing to violate these Minnesota laws." (Pls.' Mem. Law Opp'n Def.'s Mot. Summ. J. at 9.) The specific injunctive relief sought is "to force Defendant to stop and desist from all such consumer harmful conduct and sales and practice methods described herein." (Compl. ¶ 10.) In each of Counts II, III and IV of the complaint, however, defendant's conduct is set forth by plaintiffs only to the extent that it relates to their loan application. Plaintiffs have provided no indication that defendant's alleged conduct has affected the general public. Furthermore, the damages plaintiffs claim to have suffered as a result of defendant's conduct are the epitome of personal and individualized damages.[4] Plaintiffs have not established that the general public would benefit from

---

[4] Specifically, the damages plaintiffs assert are financial harm, out-of-pocket expenses, physical symptoms, behavioral changes, embarrassment, sleeplessness, lack of concentration, humiliation, and mental distress. (See Compl. ¶¶ 49, 56, 63.)

successful prosecution of their claims. Therefore, defendant's motion for summary judgment is granted as to Counts II, III and IV of plaintiffs' complaint.

## IV. Breach of Contract Claim

Count V of plaintiffs' complaint alleges that defendant breached the parties' contract by failing to broker a loan and not performing in conformance with the parties' agreements. (Compl. ¶ 65.) Under Minnesota law, to establish a breach of contract plaintiffs must show (1) contract formation, (2) performance of any conditions precedent and (3) breach of the contract by defendant. Indus. Rubber Applicators, Inc. v. Eaton Metal Prods. Co., 171 N.W.2d 728, 731 (Minn. 1969), overruled on other grounds by 231 N.W.2d 98 (Minn. 1975).

The only written contract between the parties that has been provided to the court is the Rate Lock Agreement. (Matthews Aff. Ex. A.) Under the Agreement, defendant did not commit to making a loan or guarantee that a loan would be approved. (Id.) Rather, defendant was obligated to honor certain mortgage terms provided that a lender approved plaintiffs' loan application on or before April 12, 2004. (Id.) The Agreement specifically stated "[i]f the loan has not closed on or before this expiration date, Broker is no longer obligated to the terms of this RATE LOCK AGREEMENT." (Id.) In performing its obligations under the Agreement, defendant was to

provide plaintiffs mortgage brokering services, as that term is defined by the Minnesota Statutes. See Minn. Stat. § 58.02 subds. 13, 14.[5]

Pursuant to the Agreement, defendant forwarded plaintiffs' application to a lender, Interfirst. Plaintiffs' loan application, however, was not approved by Interfirst on or before April 12, 2004. As a result, a condition precedent to defendant's obligation was not met and defendant was not obligated to the terms of the Agreement thereafter. Plaintiffs have provided no evidence to support an inference that defendant did not perform that which it was contractually and statutorily obligated to do. Therefore, the court finds that defendant did not breach any duty owed under the terms of the Agreement or the Minnesota statutes.

Although plaintiffs did not plead breach of the implied covenant of good faith and fair dealing, they raised the issue in response to defendant's motion for summary judgement as the principal basis for their breach of contract claim. It is not clear whether plaintiffs were required to separately plead breach of the implied covenant in their complaint. See Nomeco Bldg. Specialties, Inc. v. Pella Corp, 184 F.R.D. 609, 611 (D. Minn. 1999) (noting that pleading breach of contract claim and breach of

---

[5] In Minnesota, mortgage brokering involves "helping to obtain from another person, for a borrower, a residential mortgage loan or assisting a borrower in obtaining a residential mortgage loan in return for consideration to be paid by the borrower or lender or both." Minn. Stat. § 58.02 subd. 14.

implied covenant claim separately was a style of pleading that may result in coextensive and duplicative claims). Minnesota courts, however, recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing, although such an action does not exist independent of or beyond the scope of the underlying contract. In re Bond Litig., 540 N.W.2d at 502; see also Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir. 1994). The court finds that Minnesota courts would therefore require plaintiffs to separately plead their claim for breach of the implied covenant. However, even if plaintiffs could maintain their claim at this late stage it fails on the merits as discussed below.

Under Minnesota law all contracts other than sales and employment contracts include "an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (quoting Zobel & Dahl Contr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984); Minnwest Bank Cent. v. Flagship Props. LLC, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). A party acts in bad faith if it refuses "to fulfill some duty or contractual obligation based on an ulterior motive." Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998). Bad faith is also found where a party evades the "spirit of the bargain." White Stone

16

Partners, LP v. Piper Jaffray Cos., Inc., 978 F. Supp. 878, 881 (D. Minn. 1997).

Under Minnesota law, the parties' agreement therefore contained an implied covenant of good faith and fair dealing. Plaintiffs allege that defendant breached the implied covenant by (1) falsely informing plaintiffs that Interfirst denied the loan, (2) manipulating Interfirst's computer system to temporarily alter the status of plaintiffs' loan application, (3) contriving false reasons for Interfirst's denial of the loan and (4) generally acting in bad faith to prevent consummation of the loan. (Pls.' Mem. Opp'n Def.'s Mot. Summ. J. at 10.)  In opposing defendant's motion, plaintiffs have relied solely upon the unsupported allegations contained in their complaint and their affidavit in support of their motion to amend their complaint to plead punitive damages.  To successfully oppose a motion for summary judgment plaintiffs "may not merely point to unsupported self-serving allegations, but must substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor."  Bass v. SBC Communications, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005).  The court finds that plaintiffs have failed to provide any evidence in support of their implied covenant claim on which a jury could reasonably find for them.  See id. at

873 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).  Therefore defendant is entitled to summary judgement as to Count V of plaintiffs' complaint.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 13] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 2, 2005

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court